UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH ROMERO,<br><br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security<br><br>    Defendant. | Case No. 1:14-cv-01080-GSA<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

**I.   INTRODUCTION**

Plaintiff Elizabeth Romero ("Plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

**II.   BACKGROUND AND PRIOR PROCEEDINGS**[2]

Plaintiff was 47 years old at the time of her hearing before the Social Security Administration. AR 53. She completed high school through the 11th grade and is in the process of

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (ECF Nos. 7, 9.)
[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

completing her GED. AR 53, 69. Plaintiff most recently worked as a cashier and has previous experience as a medical assistant and as a microchip inspector. AR 53, 185. Plaintiff has two children over whom she shares physical custody with her ex-husband. AR 59.

Plaintiff's alleged physical condition is degenerative disc disease of the cervical spine. AR 184. Plaintiff originally filed an application under Title II that was denied on October 23, 2009 which alleged the same condition. AR 19. On April 26, 2011, Plaintiff filed a second application for disability insurance benefits under Title II, now alleging a disability beginning on October 21, 2009. AR 155-156. This application was denied initially on June 30, 2011 and on reconsideration on January 6, 2012. AR 98-101, 103-107. Plaintiff filed a request for a hearing on February 28, 2012. AR 110. The hearing was then conducted before Administrative Law Judge William C. Thompson (the "ALJ") on November 14, 2012. AR 49. On December 7, 2012, the ALJ issued an unfavorable decision determining that Plaintiff was not disabled. AR 19-28. Plaintiff filed an appeal of this decision with the Appeals Council. The Appeals Council denied her appeal, rendering the order the final decision of the Commissioner. AR 1-6.

Plaintiff now challenges that decision, arguing that: (1) The ALJ erroneously found Plaintiff's testimony not credible because of purported inconsistencies in her testimony; and (2) the ALJ failed to provide specific and legitimate reasons to reject the opinion of Morteza Farr, D.O., when he declined to adopt Dr. Farr's proposed limitations into the Plaintiff's RFC. Finally, Plaintiff includes some discussion of the ALJ's treatment of the presumption of continuing nondisability, based on Plaintiff's previously denied application for benefits.

Defendant contests Plaintiff's assessment, pointing out that: (1) The inconsistencies in Plaintiff's testimony were substantial and justified discrediting her testimony; and (2) Dr. Farr's opinion was not supported by the evidence in the record, so the ALJ's treatment of his opinion was well-founded.

**III.    THE DISABILITY DETERMINATION PROCESS**

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less

than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. § 404.1520(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. § 404.1520(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. § 404.1527, 404.1529.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability; (2) whether the claimant had medically-determinable "severe" impairments;[3] (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) whether the claimant retained the residual functional capacity ("RFC") to perform her past relevant work;[4] and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. § 404.1520(a)-(f).

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 19-28. In particular, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 21, 2009, the date specified in her application. AR 21. Further, the ALJ identified degenerative disc disease

---

[3] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c) and 416.920(c).

[4] Residual functional capacity captures what a claimant "can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545 and 416.945. "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

of the cervical spine as a medically determinable impairment. AR 22. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 22.

Based on a review of the entire record, the ALJ determined that Plaintiff had the RFC to perform "light work as defined in 20 C.F.R. § 404.1567(b) except the claimant has the ability to lift or carry up to 20 pounds occasionally and up to 10 pounds frequently; with no repetitive bilateral push or pull; sit, stand or walk for approximately 6 hours each per 8 hour work day. The claimant can occasionally balance, stoop, crouch, kneel, craw and climb ramps or stairs but never climb ladders, ropes or scaffolds. The claimant is precluded from repetitive neck movement and no overhead reaching and work environments involving hazards such as unprotected heights or hazardous, moving machinery." AR 22-23. Although Plaintiff could not perform her past relevant work, she could perform other work that exists in the national economy. AR 27.

## IV. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id*.

## V. DISCUSSION

### A. The Relevant Medical Evidence

Plaintiff argues that the ALJ improperly considered the medical evidence, as well as Plaintiff's own testimony, and thus erroneously determined that Plaintiff was not disabled. Specifically at issue is the ALJ's consideration of: (1) the opinion of Morteza Farr, D.O., a treating physician; and (2) Plaintiff's testimony to the ALJ. The following review of the medical

4

record is limited the issues of Dr. Farr's opinion and Plaintiff's credibility.

### i. Athanasios Magimbi, M.D.

Dr. Magimbi treated Plaintiff from August 9, 2007 to August 7, 2009. AR 238-240. On May 27, 2008, Dr. Magimbi wrote that Plaintiff was feeling well and rated her neck pain as 4 out of 10. AR 236. Despite the pain, she demonstrated "good neck range of motion." AR 236. On February 13, 2009, Dr. Magimbi reported that Plaintiff "has been doing very well after the last cervical epidural steroid injection" and "recently started an exercise program." AR 235. On April 3, 2009, Plaintiff rated her pain as 4.5 out of 10, which was higher than after her previous injection treatment, when she had rated her pain as 1-2 out of 10. AR 234. On April 24, 2009, Plaintiff reported more neck pain, but suggested that "if she went back to work that would lessen the stressors at home." AR 233.

### ii. Jeff Jones, M.D.

Dr. Jones treated Plaintiff between November 18, 2009 and April 13, 2011. AR 272-285. On November 18, 2009, Dr. Jones explained that Plaintiff had neck pain "with occasional symptoms extending down her right arm and into the forearm, but these symptoms are definitely not present at all times." AR 284. He also noted that Plaintiff had received steroid injections "which do seem to provide significant benefit." AR 284. He concluded that Plaintiff's "neck problems do not prevent her from working. She has been relatively stable with exacerbations and remissions over the last several years." AR 284.

Dr. Jones conducted a physical examination of Plaintiff and found that she had "full extension and rotation bilaterally," as well as "no marked tenderness over the cervical facets." AR 284-285. He also reviewed her most recent MRI. AR 285. He concluded that Plaintiff "seems relatively well managed . . . [h]er pain is managed primarily with a self directed exercise and physical therapy which has provided significant benefit too [sic] her in the past." AR 285. On May 5, 2010, Dr. Jones again saw Plaintiff and noted that she exhibited full range of motion. AR 279. He prescribed continuing physical therapy. AR 279. On January 19, 2011, he again found that Plaintiff exhibited a "full ROM of neck." AR 274.

Dr. Jones's opinion was given significant weight by the ALJ, who found that Dr. Jones

was a treating doctor who had examined Plaintiff on multiple occasions and that his opinion was based on physical examination results, as well as diagnostic/radiological test results. AR 24.

### iii. Artemio Perez, D.O.

Dr. Perez, who worked at the same practice as Dr. Farr, evaluated Plaintiff on March 16, 2011. AR 287. Plaintiff told Dr. Perez that she had "sharp, dull and stabbing" neck pain that rated 9-10 out of 10. AR 287. Dr. Perez conducted a physical examination of Plaintiff and found a positive Spurling's test on her right side, a decreased range of motion in flexion and extension, and decreased range of motion in "rotation bilaterally as well as left-sided side bending, rigid trapezius muscles bilaterally, and she does have rigid paraspinals as well." AR 288. Dr. Perez suggested a new MRI. AR 288.

### iv. Sadda Reddy, M.D.

Dr. Reddy, a reviewing physician, completed a Physical Residual Functional Capacity Assessment on June 9, 2011 after examining Plaintiff's records. AR 331. He determined that Plaintiff could: occasionally lift up to 20 pounds; frequently lift up to 10 pounds; stand and/or walk for 6 hours in an 8 hour workday; sit for about 6 hours in an 8 hour workday; and was limited in her ability to push and pull using her upper extremities. AR 332.

Dr. Reddy observed that Plaintiff's neck pain appeared to be of similar severity to the neck pain that was reviewed by the ALJ in Plaintiff's first social security case. AR 333. Dr. Reddy concluded that "[t]here are no significant or material changes in complaints or findings since the ALJ decision in October 2009." AR 333. Dr. Reddy thus recommended that the ALJ adopt the previous ALJ's decision, which required a "light RFC with postural limitations and manipulative limitations." AR 333. Specifically, Plaintiff can: occasionally crawl; occasionally climb ladders, ropes, and scaffolds; occasionally reach overhead; and avoid constant repetitive neck movements. AR 334.

Dr. Reddy's opinion was given great weight by the ALJ, as they were consistent with the medical records. AR 26.

### v. Morteza Farr, D.O.

On June 17, 2011, Dr. Farr completed a two page questionnaire about Plaintiff's

6

condition. AR 367-368. In response to the first question "Do you feel the medical problems for which you have treated the claimant preclude her from performing any full-time work at any exertion level, including the sedentary level (defined by Social Security as lifting no more than 10 pounds, sitting for 6 hours in an 8-hour work day, and standing/walking for 2 hour in an 8-hour work day . . ." Dr. Farr wrote "yes." AR 367. In response to the next question, which asked "If your answer to Question 1 is NO, do you feel the combination of her impairments restrict her to doing no more than sedentary work," Dr. Farr again wrote "yes." AR 367. He wrote that Plaintiff was capable of sitting for 4 hours in an 8 hour workday and stand/walk 1-2 hours in an 8 hour workday. AR 367. He also wrote that she could frequently lift 10 pounds and occasionally lift 15 pounds. AR 368. She was also limited in her manipulative abilities. AR 368. Finally, he concluded that Plaintiff had been limited to this extent since March 2011. AR 368.

The ALJ gave Dr. Farr's opinion reduced weight. AR 26.

**B.  The Presumption of Continuing Nondisability**

Once a plaintiff has received a finding that he or she is not disabled, that finding creates a presumption of continuing nondisability in future proceedings. *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988). This means that a plaintiff, "in order to overcome the presumption of continuing nondisability arising from the first administrative law judge's findings of nondisability, must prove 'changed circumstances' indicating a greater disability." *Id.*

Plaintiff previously received an adverse decision before the Commissioner on October 23, 2009. AR 19. Plaintiff now attempts to "clarify" the ALJ's application of the presumption of continuing nondisability in this case, although she acknowledges that "the ALJ's decision reveals that he did not apply the presumption." (Opening Brief 9:19-21, ECF No. 17.) In his decision, the ALJ states that "the prior ALJ decision was adopted," but then proceeds to state that "giving the claimant the benefit of the doubt, the residual functional capacity is more restrictive than the one contained in the prior ALJ decision." AR 23.

Because he applied a more restrictive RFC, the ALJ was not applying the presumption of continuing nondisability or "adopting" the decision of the prior ALJ. Had he done so, he would have (or should have) conducted some analysis to determine whether Plaintiff had demonstrated

the "changed circumstances" that are required to overcome the presumption. Likewise, he would not have needed to continue the rest of his analysis to the lengths that he did—if he had found that there were no changed circumstances, the entire disability analysis would end and there would be no need to make any further findings. The ALJ did not apply the presumption of continuing disability here and the Court finds no clear error here.

### C. The ALJ's Treatment of Dr. Farr's Opinion was Appropriate

#### *i. Legal standards*

The weight given to medical opinions depends in part on whether they are offered by treating, examining, or non-examining (reviewing) professionals. *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. *Lester*, 81 F.3d at 830. While a treating professional's opinion is generally accorded superior weight, if it is contradicted by an examining professional's opinion (when supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.1995), *citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). The regulations require the ALJ to weigh the contradicted treating physician opinion, *Edlund v. Massanari*, 253 F.3d 1152 (9th Cir. 2001), except that the ALJ need not give it any weight if it is conclusory and supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); *see also Magallanes*, 881 F.2d at 751.

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984). As is the case with the opinion of a treating

physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).

The opinion of a non-examining physician may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Such independent reasons may include laboratory test results or contrary reports from examining physicians, and plaintiff's testimony when it conflicts with the treating physician's opinion. *Lester*, 81 F.3d at 831, *citing Magallanes*, 881 F.2d at 751–55.

### ii. Analysis

Dr. Farr's ultimate findings regarding the extent of Plaintiff's limitations are contradicted by the findings of Drs. Reddy and Jones.[5] Consequently, the ALJ only needed to provide specific and legitimate reasons supported by substantial evidence to reject any of Dr. Farr's findings. *Lester*, 81 F.3d at 830-31.

In his decision, the ALJ explained that Dr. Farr's opinion "appears to be based upon the claimant's subjective complaints and not objective findings supporting this degree of limitation. Moreover, Dr. Farr's opinion is inconsistent with the other evidence of record as a whole, including the opinions of Dr. Khan, Dr. Perez, Dr. Jones, and Dr. Reddy." AR 26.

The ALJ thus gave Dr. Farr's opinion reduced weight because: (1) there was a general lack of objective evidence supporting his findings; and (2) the opinion was based on Plaintiff's subjective self reports. Both of these reasons constitute specific and legitimate reasons to reject a treating physician's opinion. *Tomasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (upholding rejection of physician's opinion where "ultimate conclusions . . . did not mesh with her objective

---

[5] While the ALJ construed Dr. Farr's opinion as saying that Plaintiff could do more than sedentary work but had significant other limitations, Dr. Farr's answers on the questionnaire are not entirely clear. Initially he states that Plaintiff cannot perform any full time work at any exertional level, but then states that she is restricted to doing no more than sedentary work, implying that she can, in fact, perform work at the sedentary level. Only then does he discuss her various limitations. AR 367.

data or history"); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (approving ALJ decision discounting "any medical findings based on Morgan's subjective complaints, including the medical examiners' opinions regarding his ability to work"); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (physician's finding of "marked limitations" legitimately rejected where "no substantial evidence existed demonstrating [plaintiff's] mental impairments prevented him from working").

Only one of these reasons is supported by substantial evidence, however. While Dr. Farr's assessment of Plaintiff's limitations may, in some part, be based on her subjective statements about what she can and cannot do, it is not based exclusively on these complaints. On the questionnaire, Dr. Farr lists a physical exam, an MRI, and an EMG as the basis for his opinion. AR 367. Nor is there any reference on the questionnaire to statements that are attributed to Plaintiff. There is thus inadequate evidence to conclude that Dr. Farr's opinion was based solely on Plaintiff's complaints.

Substantial evidence in the record contradicts Dr. Farr's opinion, however. Plaintiff argues that Dr. Farr is a treating physician and is thus entitled to substantial weight. (Opening Brief 13:17-25, ECF No. 17.) But many of the physicians whom the ALJ points to as sources of evidence undermining Dr. Farr's opinion are also treating physicians, including, for example, Drs. Jones and Perez. AR 26. Dr. Jones found, among other things, that Plaintiff's symptoms were intermittent and well-controlled over an extended period of time. AR 274, 279, 284-285. His opinion was based on his analysis of Plaintiff's MRIs and his own physical examinations of Plaintiff. AR 284-285. Dr. Jones's findings thus constitute substantial evidence to reject Dr. Farr's opinion.[6] *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (examining physician's opinion "alone constitutes substantial evidence" to reject treating physician's opinion where it "rests on his own independent examination"). The ALJ offered specific and legitimate reasons to reject Dr. Farr's opinion that were supported by substantial evidence.

---

[6] Plaintiff asserts that the Commissioner's reliance on Dr. Jones's findings to discredit Dr. Farr is merely a *post hoc* argument that was not raised by the ALJ in his decision. (Reply Brief 3:9-16, ECF No. 23.) This is not the case: Dr. Jones's findings were expressly detailed by the ALJ and the ALJ cited his findings as a reason for giving Dr. Farr's opinion reduced weight. AR 24, 26.

**D. The ALJ's Evaluation of Plaintiff's Credibility was Appropriate**

*i. Legal standards*

To evaluate the credibility of a claimant's testimony regarding subjective complaints of pain and other symptoms, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id*. The claimant is not required to show that the impairment "could reasonably be expected to cause the *severity* of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (emphasis added). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony regarding the severity of the symptoms for "specific, clear and convincing reasons" that are supported by substantial evidence. *Id*.

An ALJ can consider a variety of factors in assessing a claimant's credibility, including:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks omitted).

Other factors can include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). An ALJ can only rely on an inconsistency between a claimant's testimony and the objective medical evidence to reject that testimony where the ALJ specifies which "complaints are contradicted by what clinical observations." *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999). An ALJ properly discounts credibility if she makes specific credibility findings that are properly supported by the record and sufficiently specific to ensure a reviewing court that she did not "arbitrarily discredit" the testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991).

*ii. Analysis*

Here, the ALJ concluded that "claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms." AR 24. He questioned, however, "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms." AR 24. The ALJ is thus required to provide "specific, clear and convincing reasons" for finding Plaintiff not credible. *Vasquez*, 572 F.3d at 591.

The ALJ offers a lengthy discussion of his consideration of Plaintiff's testimony. Ultimately, he offers two reasons for finding Plaintiff not credible: (1) Plaintiff provides a pattern of inconsistent statements about when she became disabled and thus unable to work; and (2) Plaintiff's daily activities are inconsistent with the alleged extent of her disabilities. AR 23-24. The Court will consider each of these reasons in turn.

Plaintiff does, in fact, appear to offer a series of inconsistent statements about the date she last worked. The ALJ found that, although Plaintiff indicated that she was disabled and unable to work on January 1, 2006, she also stated that she actually stopped working on November 1, 2010. AR 23. A review of the record demonstrates that she has, at other times, offered no less than six different dates that she was disabled or unable to work. AR 37 ("**Q.** Okay. And when did you stop working? **A.** December, about the 24th, '04. **Q.** Okay. So you put down on your application that you were unable to work as of June 19th of '06. **A.** Well, that's after I found out, finally, what I knew what was going on with me. I had no idea for a long time."), 53 ("**Q.** When is the last time that you worked? **A.** The last time what? **Q.** You worked. **A.** The last time I worked was this year, September 4th of this year."), 157 ("I became unable to work because of my disabling condition on October 21, 2009"), 184 ("When did you stop working? (month/day/year) **11/01/2010**"; "Even though you stopped working for other reasons, when do you believe your condition(s) became severe enough to keep you from working? (month/day/year) **01/01/2006**"). But Plaintiff was employed, in either a full time or part time capacity, after each of these dates (with the exception of September 4, 2012). AR 53, 68, 109, 185.

Plaintiff argues that the January 1, 2006 date and the November 1, 2010 dates are consistent because January 1, 2006 is merely the last time Plaintiff "worked regularly," while the

12

November 1, 2010 date is the last time that Plaintiff worked at a job that did not constitute "substantial gainful activity." (Opening Brief 16:18-25, ECF No. 17.) This distinction does not make sense—Plaintiff does not explain what a "regular job" is and, in any case, Plaintiff appears to have worked more hours per week in a job that she held after the January 1, 2006 date than the job she held before. AR 185. These inconsistencies constitute specific, clear, and convincing reasons to doubt Plaintiff's veracity and are supported by substantial evidence.

A Plaintiff's daily activities can also be a valid reason for an ALJ to doubt a Plaintiff's subjective testimony. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (evidence that plaintiff "exercised and undertook several projects after he retired" suggested that his "later claims about the severity of his limitations were exaggerated"). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). The ALJ found that Plaintiff could engage in "some walking, light shopping, driving, talking, using the phone and the internet," as well as "drive her own car . . . and do light household chores." AR 24. While Plaintiff argues that she is only able to perform these activities in short bursts, the fact that she is able to perform them at all does suggest that her impairments are less than totally disabling. Taken in conjunction with the above-mentioned inconsistencies in Plaintiff's testimony, the ALJ provided specific, clear, and convincing reasons supported by substantial evidence to disbelieve Plaintiff's allegations of her symptoms.

## VI. CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision that the Plaintiff is not significantly limited in her ability to perform basic work activities is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant, Carolyn W. Colvin, and Commissioner of Social Security and against Plaintiff, Elizabeth Romero.

IT IS SO ORDERED.

Dated:  **August 28, 2015**                        **/s/ Gary S. Austin**
                                          UNITED STATES MAGISTRATE JUDGE